UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIAMOND CHAVANNES,

                          Plaintiff,                21-cv-5060 (JGK)

          - against -                               MEMORANDUM OPINION
                                                    AND ORDER
THE BRONX PARENT HOUSING NETWORK,
INC., ET AL.,
                          Defendants.

JOHN G. KOELTL, District Judge:

        The plaintiff, Diamond Chavannes, brought this action

against the defendants, The Bronx Parent Housing Network, Inc.

("BPHN"), Victor Rivera, Candia Richards Clarke, Mario Palumbo,

Daniel Tietz, and the City of New York (the "City"), alleging

sex- and race-based discrimination in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title

VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290

et seq. ("NYSHRL"); and the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and retaliation

in violation of Title VII.

        All defendants except the City have agreed in principle to

settlement with the plaintiff. The only remaining defendant, the

City, now moves to dismiss the plaintiff's second amended

complaint for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6). For the following reasons, the

defendant's motion to dismiss is **granted** in part and **denied** in

part.

I.

The following facts are taken from the plaintiff's Second Amended Complaint (the "Complaint"), ECF No. 59, and are accepted as true for the purposes of this motion. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). BPHN is a not-for-profit organization that serves and houses the New York City homeless population. Compl. ¶ 10. BPHN has received funding from the City to operate under "condition of supervision". Id. Chavannes alleges that the City held "organizational supervision" over BPHN staff and senior leadership. Id. ¶ 11.

In January 2020, Chavannes began employment at a housing depot owned by BPHN and the City. Id. ¶ 14. BPHN and the City allegedly employed Chavannes as an Employees Relations Specialist. Id. ¶ 17. BPHN and the City also allegedly employed Rivera, Clarke, Palumbo, and Tietz in senior leadership capacities with Rivera serving as Chief Executive Officer, Clarke as Chief Operating Officer, Palumbo as Vice President of Human Resources, and Tietz as Interim CEO. Id. ¶¶ 18-21.

Chavannes alleges that, around September 2020, she began to experience racial discrimination in the workplace. Chavannes alleges that Palumbo casually used racial slurs in her presence and imitated Black employees while using racial caricatures. Id. ¶¶ 25-26. Chavannes complained to Palumbo, objecting to the

2

alleged discrimination, but Palumbo "informed [Chavannes] that
[Palumbo] was justified in using the words and derogatory
imitations in the context of storytelling." Id. ¶ 27. Chavannes
complained further to Palumbo regarding the alleged
discrimination, and Palumbo responded by stating: "If I were
you, I'd be very careful about the statement I make." Id. ¶¶ 30-
31. Palumbo then assigned Chavannes to an "Employee Assistance
Program," which provided employees with counseling to help them
"manage their emotions," and issued an "Employee Disciplinary
Report" to Chavannes. Id. ¶¶ 33-34. The Employee Disciplinary
Report comprised "fabricated scenarios" of Chavannes's
misbehavior, and were "draped in racial stereotypes" that
"misrepresented the way [Chavannes] communicates: in a style
that resembled . . . derogatory caricature of African Americans
and Black Americans." Id. ¶ 35. After issuing the Employee
Disciplinary Report, Palumbo told Chavannes: "Diamond, you do
not want to battle with me because you won't win. You may not
know this but Mr. Rivera really likes me." Id. ¶ 36.

Chavannes then escalated her complaints to Rivera. In
response, Rivera scheduled a meeting with Palumbo, Clarke, and
Chavannes where the allegations were not addressed "in any
meaningful way." Id. ¶ 41. Following the meeting, the harassment
increased in frequency and intensity. Clarke scolded Chavannes
for complaining to Rivera, stopped referring to Chavannes by

name (instead referring to her as "Employee Relations," her job title), stripped Chavannes of her job responsibilities by announcing that employee issues were no longer handled by Employee Relations, and publicly criticized Chavannes in front of large groups at the housing depot. Id. ¶¶ 44-47.

In December 2020, Palumbo told Chavannes that complaints brought against him or Clarke would be met with retaliation and issued an additional disciplinary report against Chavannes. Id. ¶¶ 52-56.

Chavannes alleges that she began experiencing sexual harassment at the depot after she complained to Rivera about racial discrimination and harassment. According to Chavannes, Rivera "public[ly] and daily ogled at Ms. Chavannes' body," "made inappropriate comments to Ms. Chavannes about her attractiveness during virtually all interactions between them in which no third-party was present," "pried into Ms. Chavannes' personal life in search of sexual details," "played sexually charged mind games with Ms. Chavannes," and on numerous occasions "communicated to Ms. Chavannes that she should engage in sexual conduct as a quid pro quo for continued employment and career advancement." Id. ¶ 62. On other separate occasions, Rivera allegedly kissed Chavannes on the forehead, grabbed and pulled Chavannes close to his body, groped Chavannes's buttocks, and kissed Chavannes on the neck. Id. ¶¶ 64, 65, 75, 80.

Chavannes alleges that both Clarke and Palumbo "were aware that th[is] sexual harassment was ongoing, that it had become routine, and [that it] was carried out by CEO Rivera." Id. ¶ 83.

BPHN and the City fired Rivera after a New York Times article detailed his alleged misconduct. Id. ¶ 84. The City then allegedly directed and permitted BPHN to appoint Tietz as its interim CEO. Id. ¶ 85. Chavannes alleges that Tietz was aware of Chavannes's complaints of sexual and racial harassment. Id. ¶ 86.

On February 18, 2021, Tietz terminated Chavannes's employment, citing the poor performance described in Chavannes's file. During their termination conversation, Tietz allegedly stated that he was fully aware of the protected complaints that Chavannes had made. Chavannes alleges that Tietz was aware that "the file's contents, to the extent that [they] reflected negatively upon [Chavannes], were the result of unlawful retaliation against [Chavannes]." Id. ¶ 87.

Chavannes alleges that she was terminated because she complained about unlawful discrimination and harassment, and that the defendants' stated rationale for her termination – claimed poor performance – was pretextual. Chavannes also alleges that the City aided and abetted BPHN's misconduct in violation of the NYSHRL. Chavannes seeks damages for lost wages

and emotional distress. Chavannes also seeks attorney's fees and punitive damages.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy, 482 F.3d at 191. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[1]

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

the complaint is inapplicable to legal conclusions." Id. When

presented with a motion to dismiss pursuant to Rule 12(b)(6),

the Court may consider documents that are referenced in the

complaint, documents that the plaintiff relied on in bringing

suit and that are either in the plaintiff's possession or that

the plaintiff knew of when bringing suit, or matters of which

judicial notice may be taken. See Chambers v. Time Warner, Inc.,

282 F.3d 147, 153 (2d Cir. 2002).

## III.

### A.

Chavannes argues that the City was her employer and is

therefore liable for the discrimination and retaliation claims.

This argument fails because Chavannes has not pleaded sufficient

facts to demonstrate an employment relationship with the City

under Title VII, the NYSHRL, or the NYCHRL.

Title VII makes it "an unlawful employment practice for an

employer . . . to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2(a). Consequently,

"the existence of an employer-employee relationship is a primary

element of Title VII claims." Gulino v. N.Y.S. Educ. Dep't, 460

F.3d 361, 370 (2d Cir. 2006). To prove an employer-employee

relationship, a plaintiff must first show that they have

"received direct or indirect remuneration from the alleged
employer." Id. at 372. "Where no financial benefit is obtained
by the purported employee from the employer, no plausible
employment relationship of any sort can be said to exist." Id.
If a plaintiff can demonstrate remuneration, a non-exhaustive
thirteen-factor test is used to analyze whether an employment
relationship exists. See id. at 371.

     Two exceptions allow a plaintiff to bring a claim under
Title VII without a formal employment relationship: the single-
employer and joint-employer doctrines. See Arculeo v. On-Site
Sales & Mktg., LLC, 425 F.3d 193, 197 (2d Cir. 2005). The
single-employer doctrine applies "where two nominally separate
entities are actually part of a single integrated enterprise,"
such as a parent and its wholly-owned subsidiary or separate
corporations under common ownership or management. Id. at 198.
The joint-employer doctrine applies where "there is no single
integrated enterprise," but "separate legal entities . . . have
merely chosen to handle certain aspects of their employer-
employee relationship jointly." Clinton's Ditch Coop. Co. v.
NLRB, 778 F.2d 132, 137 (2d Cir. 1985).

     A four-part test determines whether a single-employer
relationship exists. The test requires a plaintiff to show: "(1)
interrelation of operations, (2) centralized control of labor
relations, (3) common management, and (4) common ownership or

financial control." Brown v. Daikin America, 756 F.3d 219, 226 (2d Cir. 2014). Although no one factor is dispositive, "control of labor relations is the central concern." Id. at 227.

A joint-employer relationship will be found "when two or more entities, according to common law principles, share significant control of the same employee." Felder v. U.S. Tennis Ass'n, 27 F.4th 834, 843 (2d Cir. 2022). Significant control will be found where "an entity other than the entity's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities." Id. at 844. However, because the central principle guiding the analysis is the level of control, "any relevant factor may be considered so long as it is drawn from the common law of agency" and "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." Id. These factors include "control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance and payroll." Id. at 838.

**B.**

Although the Complaint alleges in conclusory fashion that BPHN and the City "employed" Chavannes and the individual defendants, Compl. ¶¶ 17-21, Chavannes does not contend in response to the current motion that the City was her formal employer. Nor could she. The facts taken from her complaint

9

could not support such a determination. As a threshold matter,
Chavannes does not allege that she received remuneration or any
financial benefit from the City. Because the plaintiff has not
alleged that she received either "direct or indirect"
remuneration to demonstrate a formal employment relationship,
she cannot show a formal employment relationship with the City.
See Gulino, 460 F.3d at 372.

### C.

Chavannes also has not pleaded an employment relationship
with the City under the single-employer doctrine. The single-
employer doctrine "has been confined to two corporate contexts:
first, where the plaintiff is an employee of a wholly-owned
corporate subsidiary, and second, where the plaintiff's
employment is subcontracted by one employer to another, formally
distinct, entity." Gulino, 460 F.3d at 378.

Chavannes does not allege that BPHN is a subsidiary of the
City or that Chavannes' employment was subcontracted by BPHN to
the City.

Moreover, the facts alleged in the complaint do not support
the existence of a single-employer relationship. Chavannes does
not allege any facts indicating that the City and BPHN have
interrelated operations, centralized control of labor, common
management, or common ownership or financial control. Chavannes
alleges that the City "directed and permitted" BPHN to appoint

10

Tietz as interim CEO after Rivera was fired. Compl. ¶ 85. But this fact, standing alone, is insufficient to establish a single-employer relationship. Chavannes also alleges that the City "possessed control and input into, and acted thereupon in the retention, hiring, and reassignment" of BPHN staff and senior leadership. Id. ¶ 13. But the plaintiff does not allege any specific facts supporting this conclusory statement, and the Court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 663. Chavannes has not alleged facts demonstrating that the City controlled BPHN's hiring and firing practices. Accordingly, Chavannes has not shown the existence of a single-employer relationship.

### D.

Chavannes also has not pleaded an employment relationship with the City under the joint-employer doctrine. The joint-employer doctrine requires a showing that the City exercised "significant control" over Chavannes. Felder, 27 F.4th at 843. An employer has significant control over an employee when the employer has "control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance and payroll." Id. at 838.

The facts, as alleged, do not indicate the presence of significant control. Chavannes alleges only that the City

11

"possessed control and input into . . . the retention, hiring, and reassignment" of BPHN staff and senior leadership. Compl. ¶ 13. But the Court need not accept this conclusory allegation. Chavannes does not allege any facts in support of this conclusory statement. Accordingly, the plaintiff has failed to demonstrate that the City exercised significant control over her employment.

Chavannes also alleges that "BPHN and NYC have contracted and acted under terms of a jointly-administered single operation, or in the alternative acted [thereunder] as joint employers." Id. ¶ 12. But this is another "legal conclusion couched as a factual allegation," for which "the tenet that a court must accept as true all of the allegations . . . is inapplicable." Iqbal, 556 U.S. at 662. The plaintiff has not alleged any facts supporting this legal conclusion.

Chavannes also alleges that the City held "organizational supervision" over BPHN as a condition of the City's funding grant. Compl. ¶¶ 10-11. However, without any facts to support it, this allegation is "a legal conclusion that does not set forth a plausible claim." Klinkowitz v. Jamaica Hospital Medical Center, No. 20-cv-4440, 2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022). Because the plaintiff does not plead facts that demonstrate the City's exercise of control over BPHN, the legal conclusion that the City supervises BPHN is insufficient.

Moreover, the allegation still would not establish that the City exercises control over Chavannes's employment specifically – instead of over BPHN as an entity generally – as required by the Felder test.

Chavannes argues that the question of whether a defendant could be considered a joint-employer is not suited to resolution on a motion to dismiss because it is a question of fact that must be decided by a jury. But the issue on this motion to dismiss is not whether the plaintiff has proven that the City was her employer under some theory, but rather whether she has alleged sufficient facts to state a plausible claim that the City was her employer under a viable legal theory. The plaintiff has not yet done so. See, e.g., Felder, 27 F.4th at 845-47.[2]

### E.

Because Chavannes has not alleged an employment relationship with the City sufficient to impose liability under Title VII, the NYCHRL, or the NYSHRL, the City's motion to

---

[2] Chavannes argues that her NYCHRL claims should be construed more liberally than her claims under Title VII and the NYSHRL. However, although the NYCHRL generally requires an independent liberal construction, New York courts apply the same joint-employer test to NYCHRL claims that is applied to claims under Title VII and the NYSHRL. See, e.g., Brankov v. Hazzard, 36 N.Y.S.3d 133, 134 (App. Div. 2016). Thus, for the reasons explained above, Chavannes has failed to allege sufficient facts to state a plausible joint-employer relationship under the NYCHRL.

dismiss Chavannes's discrimination and retaliation claims is **granted**.

### IV.

Chavannes also alleges that the City is liable under the NYSHRL for aiding and abetting the misconduct of BPHN and its senior leadership by "act[ing] through" BPHN in terminating the plaintiff. Pl.'s Opp., ECF No. 76, at 16. This claim fails because, on the plaintiff's theory, the City cannot aid and abet its own misconduct. Alternatively, the claim fails because Chavannes does not show that the City actually participated in, or knew of, the alleged misconduct.

The NYSHRL makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. L. § 296(6). A claim for aiding and abetting liability under the NYSHRL requires the plaintiff to show that the defendant "actually participated in such unlawful conduct by the employer." McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). "Aiding and abetting liability requires that the aider and abettor share the intent or purpose of the principal actor, and there can be no partnership in an act where there is no community of purpose." Xiang v. Eagle Enters., LLC, No. 19-cv-1752, 2020 WL 248941, at *6 (S.D.N.Y. Jan. 16, 2020); see also McHenry, 510 F. Supp. 3d

14

at 68. Parties cannot be held liable for "aiding and abetting their own violations of the Human Rights Law." Strauss v. N.Y. State Dep't of Educ., 805 N.Y.S.2d 704, 709 (App. Div. 2005).

Chavannes alleges that the City "acted through" BPHN senior leadership by terminating her employment with a discriminatory and retaliatory motive. But if the City "acted through" the individual defendants, then any misconduct on the part of BPHN individual leadership would be imputable to the City. However, the City cannot be held liable for "aiding and abetting [its] own conduct." Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012). Because the plaintiff's allegation implies that the City's own actions gave rise to the discrimination claim, the City cannot also be held liable for aiding and abetting that same conduct.

Nor does Chavannes allege facts showing that the City actually participated in the alleged misconduct. Chavannes alleges that the misconduct was carried out by the individual defendants. But Chavannes does not plead any facts connecting the City with the individual defendants' actions or demonstrating any participation by the City. Although Chavannes alleges that the City held "organizational supervision" over BPHN leadership, no additional facts are pled to demonstrate that the City actually participated in the alleged mistreatment. Compl. ¶ 11.

Chavannes has also not pleaded facts indicating that the City shared the intent or purpose of the individual defendants. Chavannes alleges that the individual defendants are employees of BPHN but does not allege any facts to support that they were City employees. Consequently, any discriminatory intent on the part of the individual defendants cannot be assigned to the City for purposes of aiding and abetting liability. The pleaded facts also do not indicate that the City had any knowledge of the ongoing misconduct sufficient to form the requisite intent or purpose with respect to that conduct. Consequently, the City cannot be held liable under the NYSHRL for aiding and abetting any unlawful conduct.

The plaintiff's allegations do not permit the City to be liable as an aider-and-abettor. Accordingly, the City's motion to dismiss Chavannes's aiding and abetting claim under the NYSHRL is **granted.**

**V.**

Chavannes also alleges that the City is liable under the NYCHRL on a theory of vicarious liability for the actions of BPHN staff. But the City cannot be vicariously liable for the acts of BPHN staff because no facts are alleged indicating that the individual defendants were employed by the City for the same reasons that the plaintiff has not alleged that she was employed by the City. See N.Y.C. Admin. Code § 8-107(13)(b). Accordingly,

the City's motion to dismiss the plaintiff's claim of vicarious liability is **granted.**

## VI.

The City requests that the complaint be dismissed with prejudice. However, courts should freely give leave to file an amended complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be given "in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . ." Foman v. Davis, 371 U.S. 178, 182 (1962). The City has not established that any of these reasons are present here. The City cites one case, TechnoMarine SA v. Giftports, Inc., in support of its request. See 758 F.3d 493, 506 (2d Cir. 2014). But TechnoMarine is inapposite because the plaintiff there was granted leave to amend after the court granted the defendant's first motion to dismiss; TechnoMarine only denied the plaintiff a second opportunity to amend a complaint after the defendant's second motion to dismiss. Id. Because this is the first motion to dismiss in this case, Chavannes should be given the same initial opportunity granted to the plaintiff in TechnoMarine.

Accordingly, the plaintiff's complaint is dismissed without prejudice. The plaintiff may file an amended complaint containing any additional factual allegations, if any, supporting an employment relationship with the City.

### CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted** without prejudice to Chavannes's ability to file an amended complaint. Chavannes may file a third amended complaint within 30 days of the date of this Memorandum Opinion and Order. The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:      **New York, New York**
             **September 9, 2022**

**John G. Koeltl**
**United States District Judge**